**FILED IN MY OFFICE**
**DISTRICT COURT CLERK**
**6/21/2016 3:09:35 PM**
**James A. Noel**
**Lorenzo Renteria**

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT

BEN DAVIS, as Personal Representative
of the Wrongful Death Estate of
ESTRELLA CANDELARIA, Deceased,
RAY M. VARGAS, II, as Guardian
ad litem for V.C., an incapacitated person,
and LORRAINE GONZALES,

       Plaintiffs,

vs.                            No. D-202-CV-2016-03164

ARCA, THE STATE OF NEW MEXICO
DEPARTMENT OF HEALTH, THE STATE
OF NEW MEXICO AGING AND LONG-TERM
SERVICES DEPARTMENT, MARIA AVITIA, in
her personal capacity acting under color of state law;
MARQUITA HERRERA, in her personal capacity
acting under color of state law; LYDIA JOHNSON
GALLEGOS, in her personal capacity acting under
color of state law; ARMANDA GARCIA,
MARTIN GARCIA, and JOHN DOES 1-5, in their
personal capacity acting under color of state law;
and CHILDREN'S,YOUTH AND FAMILIES
DEPARTMENT JOHN DOES, in their personal
capacity acting under color of state law.

       Defendants.

### FIRST AMENDED COMPLAINT FOR VIOLATIONS OF
### THE NEW MEXICO TORT CLAIMS ACT, CIVIL RIGHTS VIOLATIONS,
### <u>PREMISES LIABILITY AND NEGLIGENCE</u>

COMES NOW Plaintiffs Ben Davis as Personal Representative of the Wrongful Death

Estate of Estrella Candelaria, deceased, Ray M. Vargas, II, as Guardian ad litem for V.C., an

incapacitated person, and Lorraine Gonzales state the following causes of action against

Defendants:



**Jurisdiction and Venue**

1. Ben Davis is a resident of Albuquerque, Bernalillo County, New Mexico. He is the duly appointed personal representative of the Wrongful Death Estate of Estrella Candelaria, deceased. (*See* D-202-CV-2015-03976).

2. Ray M. Vargas, II is a resident of Albuquerque, Bernalillo County, New Mexico. He is the duly appointed Guardian ad litem for V.C., an incapacitated person, for purposes of this Wrongful Death matter. (*See* D-202-PQ-2001-00029).

3. V.C. is an incapacitated person who lives in Albuquerque, Bernalillo County, New Mexico.

4. Plaintiff Lorraine Gonzales is a resident of Albuquerque, Bernalillo County, New Mexico and is the biological mother to Estrella Candelaria and V.C.

5. Defendant ARCA is a domestic non-profit organization with its principal place of business in Albuquerque, Bernalillo County, New Mexico. At all times material to the allegations set forth in this lawsuit, Defendant ARCA provided services to Estrella Candelaria and to V.C., including managing and operating the homes in which they were placed, choosing the persons who were responsible for their care, arranging for and overseeing the guardianship for Estrella Candelaria and V.C., and was responsible for their protection and care.

6. Defendant The State of New Mexico Department of Health (hereafter "DOH") is a department of the New Mexico state government which provides services to persons with developmental disabilities, like Estrella Candelaria and V.C., including managing the Developmental Disabilities Waiver ("DD Waiver") and other services to which Estrella and V.C. were entitled. At all times material to the allegations set forth in this lawsuit, DOH was responsible for the protection and care for Estrella Candelaria and V.C.

2

7.    Defendant The State of New Mexico Department of Aging and Long-Term Services (hereafter "LTS") is a department of the New Mexico state government which provides services to persons with developmental disabilities, like Estrella Candelaria and V.C., including overseeing and managing the community homes and caretakers responsible for their care and protection. LTS also operates the New Mexico Adult Protective Services program and is responsible for ensuring that people in need of protective services receive them.

8.    At all times material to the allegations set forth in this lawsuit, Defendant Maria Avitia was a resident of Albuquerque, Bernalillo County, New Mexico and was employed by ARCA as a caregiver to Estrella Candelaria. Defendant Avitia was responsible for the care and protection of Estrella Candelaria while she was in her custody and control.

9.    At all times material to the allegations set forth in this lawsuit, Defendant Marquita Herrera was a resident of Albuquerque, Bernalillo County, New Mexico. Defendant Herrera was employed by ARCA as Estrella Candelaria's case manager and, at all times, was responsible for her protection and care.

10.    At all times material to the allegations set forth in this lawsuit, Defendant Lydia Johnson Gallegos was a resident of Albuquerque, Bernalillo County, New Mexico. Defendant Johnson Gallegos was employed by ARCA as Estrella Candelaria's caregiver and was responsible for the care and protection of her while she was in her custody and control.

11.    At all times material to the allegations set forth in this lawsuit, Defendant Armanda Garcia was initially a resident of Bernalillo County, New Mexico and subsequently was a resident of Phoenix, Arizona. Defendant Amanda Garcia was the legal guardian for Estrella Candelaria and V.C. and, at all times, was responsible for their protection and care.

12.    At all times material to the allegations set forth in this lawsuit, Defendant Martin Garcia was a resident of Albuquerque, Bernalillo County, New Mexico. Defendant Martin

3

Garcia was given authority and responsibility over Estrella Candelaria and V.C. by their legal guardian, Defendant Armanda Garcia. During that time, Defendant Martin Garcia was

13.    At all times material to the allegations set forth in this lawsuit, Defendants John Does 1-5 were residents of New Mexico (county unknown). Defendants John Does 1-5 were employed by ARCA and, at all times, were responsible for Estrella Candelaria and V.C.'s protection and care.

14.    Defendant Children, Youth & Families Department ("CYFD") John Does were agents or employees of CYFD. Defendants CYFD John Does were residents of New Mexico (county unknown). At all times material to the allegations set forth in this lawsuit, Defendants CYFD John Does were responsible for the custody, care, well-being, and support of Estrella Candelaria and V.C. while they were in the treatment foster care system after being removed from their biological family.

15.    At all times material to the allegations set forth in this lawsuit, Defendants Avitia, Herrera, and John Does 1-5 acted within the course and scope of their duties as public employees, were state actors, and acted under color of state law.

16.    This action arises under the provisions of the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983, the New Mexico Tort Claims Act, and general principles of New Mexico statutory law and common law.

17.    Venue is proper in this judicial district pursuant to NMSA 1978, §§41-4-18(B) and 38-3-1(A) and (G).

### General Allegations

18.    Lorraine C. Gonzales and Perry Candelaria are the biological parents of V. C. and Estrella Candelaria,

19.    Estrella Candelaria and V.C. were both born with microcephaly, causing severe developmental delays.

20.    In the mid 1990's Lorraine Gonzales and Perry Candelaria were getting a divorce and left the family home.

21.    In March, 1998, When Estrella Candelaria was approximately 11 years old, the New Mexico Children, Youth & Families Department (hereafter "CYFD") investigated their father, Perry Candelaria, for child neglect of Estrella and V.C., and filed a petition seeking custody of both children.

22.    As a result of that investigation, Estrella and V.C. were removed from their father's home, taken into custody by the State, and placed into treatment foster care with ARCA.

23.    Estrella and V.C. remained in treatment foster care operated by ARCA until they turned 18 years old, at which time ARCA assigned the daughter of an ARCA foster parent to be their legal guardian.  The appointed guardian, Defendant Armanda Garcia, did not have any familial relationship to Estrella or V.C.

24.    Throughout the years that Estrella and V.C. were in treatment foster care, CYFD agents and employees failed to attempt reunification with either their biological father or their biological mother.

25.    Throughout the years that Estrella and V.C. were in treatment foster care, CYFD agents and employees failed to make these girls adoptable or otherwise move them toward a permanent placement.

26.    As a result, Estrella and V.C. "aged out" of foster care when they turned 18 years old and never had a permanent placement.

27.     After Estrella and V.C. turned 18 years old, they remained in care that was at all times supervised and orchestrated by ARCA and its agents and employees, including Armanda Garcia's relatives.

28.     Throughout the years between 2005 and 2014, Lorraine Gonzales had occasional and limited contacts with Estrella and V.C.

29.     At all times material to the allegations set forth in this lawsuit, Estrella Candelaria and V.C. were eligible for services through the DD Waiver as a result of their developmental and intellectual disabilities.   The DD Waiver is a State of New Mexico program operated by the Department of Health.   The DD Waiver program provides an array of services for people with developmental disabilities to assist them in living in the community rather than in a facility setting.   Providers like ARCA contract with the DOH to provide the services to which the DD Waiver beneficiaries are entitled.   ARCA was the contractor/provider for Estrella Candelaria and V.C.'s services under the DD Waiver.

30.     At some time before May 20, 2014, ARCA agents or employees placed Estrella Candelaria into the home of ARCA caregiver, Defendant Maria Avitia.

31.     Estrella's placement into Defendant Avitia's home came as a result of decisions made by Estrella's IDT (Individualized Development Team), or a series of people paid by Defendant DOH to look out of Estrella's best interest, including the ARCA employee who served as her case manager, Defendant Marquita Herrera.   Estrella would not have been placed in Defendant Avitia's ARCA home but for the decisions made by her IDT, at the direction and recommendation of her ARCA case manager, Defendant Herrera.

32.     At some time before May 20, 2014, ARCA agents or employees had concerns about Defendant Avitia's ability to provide a safe environment for Estrella Candelaria.

6

33.    On or about May 20, 2014, according to Defendant Herrera, she arrived at Defendant Avitia's home to check on Estrella Candelaria. Defendant Herrera noticed significant bruising throughout Estrella's body and determined she needed to be transported to Presbyterian Kaseman Hospital for evaluation.    Defendant Herrera also called Albuquerque Police Department to report the suspicious injuries.

34.    According to Vicki Silva, another ARCA caregiver, on or about May 19, 2014 Defendant Herrera arranged for Defendant Avitia to transport Estrella Candelaria to her home for respite care. Upon the Defendant Avitia and Estrella Candelaria's arrival, Vicki Silva noticed the severe and significant bruising to Estrella Candelaria. Defendant Avitia and Vicki Silva conducted a body check of Estrella Candelaria and Defendant Avitia informed Vicki Silva that the bruises and injuries were self-inflected.

35.    During the physical examination of Estrella Candelaria at Kaseman Hospital, bruising was found on her groin and there was concern of possible sexual abuse. Estrella Candelaria had to undergo an examination by a Sexual Assault Nurse Examiner.

36.    Upon information and belief, ARCA was aware of the injuries sustained by Estrella and Defendants DOH and LTS were notified of the suspicious injuries. Upon such notification, Defendants DOH and LTS were obligated to arrange for Estrella's safety.

37.    Between May 20, 2014 and June 22, 2014 it is unclear how many ARCA homes and ARCA caregivers to which Estrella Candelaria was entrusted.

38.    Upon information and belief, ARCA's agents and employees were aware of other suspicious injuries to Estrella Candelaria prior to May 20, 2014.

39.    By June 22, 2014, Estrella Candelaria was in the ARCA home of an ARCA caregiver, Lydia Johnson Gallegos.

40.    On June 22, 2014, Estrella reported stomach pain to Ms. Johnson Gallegos. ARCA permitted Ms. Johnson Gallegos to give Estrella Pepto-Bismol for the stomach pain.

41.    Ms. Johnson Gallegos left Estrella alone for an unknown period of time and when she returned she found Estrella unresponsive and not breathing.  Paramedics were called, but Estrella could not be resuscitated and was pronounced dead.

42.    The New Mexico Officer of the Medical Investigator performed an autopsy and investigation of Estrella Candelaria's death.  The OMI pathologist, Chief Medical Investigator Ross Zumwalt, MD, concluded that Estrella died as a result of drug toxicity – specifically that she ingested diltiazem.  The toxicology results were confirmed by Dr. Zumwalt's reference in his report that "the foster family noticed that 8-10 capsules of a prescription medication for one of the family members was missing."

43.    At all times material to the allegations set forth in this lawsuit, Defendant ARCA managed the care and services of Estrella Candelaria and her sister, V.C.

44.    At all times material to the allegations set forth in this lawsuit, Defendants Avitia, Herrera, Johnson Gallegos, and John Does 1-5 were employees or agents for Defendant ARCA and were acting within the course and scope of their duties.

45.    At all times material to the allegations set forth in this lawsuit, Defendant DOH was ultimately responsible for Estrella's safety and well-being.

## Count I
## Premises Liability – Defendant ARCA

46.    All previous paragraphs are incorporated by reference as if fully set forth herein.

47.    At all times material to the allegations set forth in this lawsuit, Estrella Candelaria was a recipient of the DD Waiver benefits and services, which were contracted to be supplied to them through ARCA.

48. At all times material to the allegations set forth in this lawsuit, Defendant ARCA was responsible for the living arrangements for Estrella Candelaria and had total authority and control over where she lived and who was to be her caregiver.

49. Defendant ARCA owed a duty to Estrella Candelaria to exercise ordinary care to ensure that her home placements were reasonably safe.

50. As a child with developmental disabilities and then a grown adult with severe cognitive and developmental impairments, Estrella Candelaria relied upon ARCA to ensure the homes into which she was placed were safe.

51. Defendant ARCA breached its duty to Estrella Candelaria when its agents and employees selected Defendant Avitia's home as a placement for Estrella.

52. Defendant ARCA further breached its duty to Estrella Candelaria when Defendant Avitia, as its agent and employee, did not ensure her home was reasonably safe for Estrella.

53. Defendant ARCA further breached its duty to Estrella Candelaria when it knew that Defendant Avitia's home was not a safe place for Estrella Candelaria.

54. Defendant ARCA breached its duty to Estrella Candelaria when its agents and employees selected Defendant Johnson Gallegos' home as a placement for Estrella.

55. Defendant ARCA further breached its duty to Estrella Candelaria when Defendant Johnson Gallegos, as its agent and employee, did not ensure her home was reasonably safe for Estrella.

56. As a direct and proximate result of Defendant ARCA's breach of duty, its premises were unreasonably dangerous for Estrella Candelaria and she suffered physical abuse, sexual abuse, traumatic emotional abuse, severe mental anguish, and loss of life.

57.    At all times material to the allegations set forth in this lawsuit, Defendant ARCA's conduct was reckless, willful, wanton, and indifferent to the safety and rights of Estrella Candelaria such that it is liable for punitive damages.

**Count II**
**42 U.S.C. § 1983**
**<u>Substantive Due Process – Defendant Maria Avitia and John Does 1-5</u>**

58.    All previous paragraphs are incorporated by reference as if fully set forth herein.

59.    At all times material to the allegations set forth in this lawsuit, Defendants Avitia and John Does 1-5, as persons entrusted by the state with the care of incapacitated persons who are reliant upon the state and its services, were acting under color of state law.

60.    At all times material to the allegations set forth in this lawsuit, Estrella Candelaria had a fundamental interest and right, protected by the Fourteenth Amendment to the United States Constitution, to bodily integrity, personal safety, privacy, and freedom from unlawful invasion and violation of her person, and not to be subjected to an unsafe environment in which she was vulnerable to physical and emotional injury.

61.    Defendants Avitia and John Does 1-5 violated Estrella Candelaria's constitutional rights when she perpetrated physical and/or sexual abuse against Estrella while she was in their custody and care.

62.    In the commission of the acts alleged herein, Defendants Avitia and John Does 1-5 acted knowingly, recklessly or with deliberate indifference and callous disregard of the rights of Estrella Candelaria and their conduct shocked the conscience.

63.    As a direct and proximate result of violations of Estrella Candelaria's constitutional rights by Defendants Avitia and John Does 1-5, Estrella Candelaria suffered physical abuse, sexual abuse, traumatic emotional abuse, and severe mental anguish.

**Count III**
**42 U.S.C. § 1983**
**Substantive Due Process (Special Relationship)**
**– Defendant Marquita Herrera and John Does 1-5**

64. All previous paragraphs are incorporated by reference as if fully set forth herein.

65. While receiving developmental disabilities services arranged by, and paid for by, the State of New Mexico, and while in the custody of the State of New Mexico through its departments, officers, employees, and agents, including but not limited to Defendants Marquita Herrera and John Does 1-5, Estrella Candelaria had a fundamental right, protected by the Fourteenth Amendment to the United States Constitution, not to be placed in, or subjected to, an injurious and unsafe environment in which she was vulnerable to physical, sexual and/or emotional abuse.

66. Defendants Marquita Herrera and John Does 1-5 had a duty, enforceable under the Fourteenth Amendment to the United States Constitution, to ensure the safe and proper disposition of the vulnerable incapacitated adults within their custody and control.

67. Defendants Herrera and John Does 1-5 failed to protect Estrella Candelaria from harm by third persons when they knew that Defendant Avitia was not a proper caregiver. Defendants had notice that Defendant Avitia was not providing a safe environment for Estrella Candelaria and she was at risk of harm.

68. Defendants' wrongful acts constituted failures to exercise professional judgment and an abandonment of professional standards and are conscience shocking.

69. As a direct and proximate result of violations of Estrella Candelaria's constitutional rights and other breaches of duty by Defendants Marquita Herrera and John Does 1-5, Estrella Candelaria suffered physical abuse, sexual abuse, traumatic emotional abuse, and severe mental anguish and loss of life.

## Count IV
## New Mexico Tort Claims Act Section 41-4-6 – Defendant DOH and LTS

70. All previous paragraphs are incorporated by reference as if fully set forth herein.

71. At all times material to the allegations set forth in this lawsuit, Defendants DOH and LTS had control over the placement of Estrella Candelaria, her care and her services.

72. At all times material to the allegations set forth in this lawsuit, Defendants DOH and LTS exercised substantial authority and control over the ARCA homes in which Estrella Candelaria was placed throughout her life.

73. At all times material to the allegations set forth in this lawsuit, Defendants DOH and LTS had a duty to regulate and otherwise ensure that the homes in which Estrella Candelaria was placed was safe for her.

74. Defendants DOH and LTS, through ARCA, operated Defendant Avitia's home.

75. Defendants DOH and LTS, through ARCA, operated Defendant Johnson Gallegos' home.

76. Defendants DOH and LTS, through ARCA, operated Defendants John Does 1-5's home.

77. Defendants DOH and LTS breached their duties in the operation of these placement homes for Estrella Candelaria when they:

    (a) Failed to ensure Defendant Avitia was a reasonably safe person to care for Estrella;

    (b) Failed to ensure Defendant Johnson Gallegos was a reasonably safe person to care for Estrella;

    (c) Failed to ensure Defendants John Does 1-5 were reasonably safe people to care for Estrella;

12

(d) Failed to ensure the premises of the Avitia home, including all persons with access to Estrella Candelaria on the premises, was reasonably safe;

(e) Failed to ensure the premises of the Johnson Gallegos home, including all persons with access to Estrella Candelaria on the premises, was reasonably safe;

(f) Failed to ensure the premises of the John Does 1-5 homes, including all persons with access to Estrella Candelaria on the premises, were reasonably safe;

(g) Failed to ensure that all dangerous items, including prescription medications, that could pose a risk of harm to Estrella Candelaria, were put away and out of her reach.

78.    As a result of the breach of duty, Defendants DOH and LTS were negligent in their operation of Defendant Avitia's home.

79.    As a result of the breach of duty, Defendants DOH and LTS were negligent in their operation of Defendant Johnson Gallegos' home.

80.    As a result of the breach of duty, Defendants DOH and LTS were negligent in the operation of Defendants John Does 1-5's home.

81.    As a direct and proximate result of Defendants DOH and LTS' negligence, Estrella Candelaria suffered physical abuse, sexual abuse, traumatic emotional abuse, and severe mental anguish and loss of life.

**Count V**
**Negligence/*Respondeat Superior* – Defendants Avitia and John Does 1-5**

82.    All previous paragraphs are incorporated by reference as if fully set forth herein.

83. At all times material to the allegations set forth in this lawsuit, Defendants Avitia and John Does 1-5 owed Estrella Candelaria a duty to exercise ordinary care to protect her from injury.

84. Defendants Avitia and John Does 1-5 knew that Estrella Candelaria was a vulnerable person, could not express herself, and relied entirely on the adults to whom she was entrusted for her safety and protection.

85. Defendants Avitia and John Does 1-5 breached their duties to Estrella Candelaria when they subjected her to abuse and injury.

86. As a direct and proximate result of Defendants Avitia and John Does 1-5's negligence, Estrella Candelaria suffered physical abuse, sexual abuse, traumatic emotional abuse, and severe mental anguish.

87. At all times material to the allegations set forth in this lawsuit, Defendants Avitia and John Does 1-5 were agents or employees of ARCA.

88. At all times material to the allegations set forth in this lawsuit, ARCA maintained control over the manner in which the details of Defendants Avitia and John Does 1-5 performed their work for Estrella Candelaria.

89. At all times material to the allegations set forth in this lawsuit, Defendants Avitia and John Does 1-5 performed duties that they were employed to perform as part of their agency with ARCA when they maintained care and control over Estrella Candelaria.

90. At all times material to the allegations set forth in this lawsuit, Defendants Avitia and John Does 1-5 acted, at least in part, to serve the interests of ARCA when they continued their role of providing care and protection to Estrella Candelaria, even after the bruising was observed.

14

91. At all times material to the allegations set forth in this lawsuit, Defendants Avitia and John Does 1-5 acted within the course and scope of their employment with ARCA.

92. At all times material to the allegations set forth in this lawsuit, Defendants Avitia and John Does 1-5 exercised significant control and authority over Estrella Candelaria to such a degree that Estrella depended entirely upon Defendants Avitia and John Does 1-5 for food, clothing, shelter, protection and safety.

93. Defendants Avitia and John Does 1-5 were aided by their agency with ARCA in the commission of the wrongs perpetrated against Estrella Candelaria.

94. Defendant ARCA is vicariously liable for the acts and omissions of Defendants Avitia and John Does 1-5.

95. At all times material to the allegations set forth in this lawsuit, Defendants Avitia and John Does 1-5's conduct was reckless, willful, wanton, and indifferent to the safety and rights of Estrella Candelaria such that they are liable for punitive damages.

**Count VI**
**Negligence/*Respondeat Superior* – Defendants Lydia Johnson Gallegos and John Does 1-5**

96. All previous paragraphs are incorporated by reference as if fully set forth herein.

97. At all times material to the allegations set forth in this lawsuit, Defendants Johnson Gallegos and John Does 1-5 owed Estrella Candelaria a duty to exercise ordinary care to protect her from injury.

98. Defendants Johnson Gallegos and John Does 1-5 knew that Estrella Candelaria was a vulnerable person, could not express herself, and relied entirely on the adults to whom she was entrusted for her safety and protection.

99. Defendants Johnson Gallegos and John Does 1-5 breached their duties to Estrella Candelaria when they failed to ensure that dangerous objects, like prescription medication, was out of her reach.

100. As a direct and proximate result of Defendants Johnson Gallegos' and John Does 1-5's negligence, Estrella Candelaria suffered physical abuse, sexual abuse, traumatic emotional abuse, and severe mental anguish and loss of life.

101. At all times material to the allegations set forth in this lawsuit, Defendants Johnson Gallegos and John Does 1-5 were agents or employees of ARCA.

102. At all times material to the allegations set forth in this lawsuit, ARCA maintained control over the manner in which the details of Defendants Johnson Gallegos and John Does 1-5 performed their work for Estrella Candelaria.

103. At all times material to the allegations set forth in this lawsuit, Defendants Johnson Gallegos and John Does 1-5 performed duties that they were employed to perform as part of their agency with ARCA when they maintained care and control over Estrella Candelaria.

104. At all times material to the allegations set forth in this lawsuit, Defendants Johnson Gallegos and John Does 1-5 acted, at least in part, to serve the interests of ARCA when they continued their role of providing care and protection to Estrella Candelaria, even after the bruising was observed.

105. At all times material to the allegations set forth in this lawsuit, Defendants Johnson Gallegos and John Does 1-5 acted within the course and scope of their employment with ARCA.

106. At all times material to the allegations set forth in this lawsuit, Defendants Johnson Gallegos and John Does 1-5 exercised significant control and authority over Estrella

Candelaria to such a degree that Estrella depended entirely upon Defendants Johnson Gallegos and John Does 1-5 for food, clothing, shelter, protection and safety.

107.    Defendants Johnson Gallegos and John Does 1-5 were aided by their agency with ARCA in the commission of the wrongs perpetrated against Estrella Candelaria.

108.    Defendant ARCA is vicariously liable for the acts and omissions of Defendants Johnson Gallegos and John Does 1-5.

109.    At all times material to the allegations set forth in this lawsuit, Defendants Johnson Gallegos and John Does 1-5's conduct was reckless, willful, wanton, and indifferent to the safety and rights of Estrella Candelaria such that they are liable for punitive damages.

## Count VII
### Negligence/*Respondeat Superior* – Defendants Marquita Herrera and John Does 1-5

110.    All previous paragraphs are incorporated by reference as if fully set forth herein.

111.    At all times material to the allegations set forth in this lawsuit, Defendants Herrera and John Does 1-5 owed Estrella Candelaria a duty to exercise ordinary care to protect her from injury.

112.    Defendants Herrera and John Does 1-5 knew that Estrella Candelaria was a vulnerable person, could not express herself, and relied entirely on the adults to whom she was entrusted for her safety and protection.

113.    Defendants Herrera and John Does 1-5 breached their duties to Estrella Candelaria when they knew or should have known that she was in danger, but failed to take action to protect her.

114.    As a direct and proximate result of Defendants Herrera's and John Does 1-5's negligence, Estrella Candelaria suffered physical abuse, sexual abuse, traumatic emotional abuse, and severe mental anguish and loss of life.

17

115.   At all times material to the allegations set forth in this lawsuit, Defendants Herrera and John Does 1-5 were agents or employees of ARCA.

116.   At all times material to the allegations set forth in this lawsuit, ARCA maintained control over the manner in which the details of Defendants Herrera and John Does 1-5 performed their work for Estrella Candelaria.

117.   At all times material to the allegations set forth in this lawsuit, Defendants Herrera and John Does 1-5 performed duties that they were employed to perform as part of their agency with ARCA when they maintained care and control over Estrella Candelaria.

118.   At all times material to the allegations set forth in this lawsuit, Defendants Herrera and John Does 1-5 acted, at least in part, to serve the interests of ARCA when they continued their role of providing care and protection to Estrella Candelaria, even after the bruising was observed.

119.   At all times material to the allegations set forth in this lawsuit, Defendants Herrera and John Does 1-5 acted within the course and scope of their employment with ARCA.

120.   At all times material to the allegations set forth in this lawsuit, Defendants Herrera and John Does 1-5 exercised significant control and authority over Estrella Candelaria to such a degree that Estrella depended entirely upon Defendants Herrera and John Does 1-5 for food, clothing, shelter, protection and safety.

121.   Defendants Herrera and John Does 1-5 were aided by their agency with ARCA in the commission of the wrongs perpetrated against Estrella Candelaria.

122.   Defendant ARCA is vicariously liable for the acts and omissions of Defendants Herrera and John Does 1-5.

123. At all times material to the allegations set forth in this lawsuit, Defendants Herrera and John Does 1-5's conduct was reckless, willful, wanton, and indifferent to the safety and rights of Estrella Candelaria such that they are liable for punitive damages.

## Count VIII
### Breach of Fiduciary Duty –Defendants Armanda Garcia and Martin Garcia

124. All previous paragraphs are incorporated by reference as if fully set forth herein.

125. At all times material to the allegations set forth in this lawsuit, Defendants Armanda and Martin Garcia ("Garcia Defendants") knew that Estrella Candelaria was vulnerable to injury and in need of protection and care.

126. Garcia Defendants knew that Estrella Candelaria would suffer injury and harm if she was not properly protected.

127. Garcia Defendants assumed duties as Estrella Candelaria's fiduciary when they became her legal guardian and power of attorney.

128. Garcia Defendants breached their fiduciary duties to Estrella Candelaria when they failed to protect her from foreseeable harm.

129. As a direct and proximate result of Garcia Defendant breach of fiduciary duty, Estrella Candelaria suffered physical abuse, sexual abuse, traumatic emotional abuse, and severe mental anguish and loss of life.

## Count IX
### Violation of Adoption & Safe Families Act –Defendants CYFD John Does 1-5

130. All previous paragraphs are incorporated by reference as if fully set forth herein.

131. The Adoption Assistance and Child Welfare Act, 42 U.S.C. §§ 620-628, 670-679a, establishes requirements for States in order to receive reimbursement for certain expenses in the provision of child welfare services.

19

132.    Pursuant to this Act, when a child is taken into state custody and removed from her parents, Defendants CYFD John Does are required to either make an effort to preserve the family and reunify the child with her biological family, or to complete whatever steps are necessary to finalize the permanent placement of the child.

133.    Defendants failed to make any efforts to put Estrella Candelaria and V.C. on a path towards a permanent placement – either with their biological family or through adoption.

134.    Estrella Candelaria and V.C. were beneficiaries of the Act's requirements, which confers an individual right on foster children that CYFD be required to have a plan for permanent placement of the children in its care and custody.

135.    Estrella Candelaria and V.C.'s statutory right is enforceable through an action for damages pursuant to 42 U.S.C. § 1983.

136.    Estrella Candelaria and V.C. suffered physical and emotional damages as a result of Defendant's wrongful acts and violations of their statutory rights.

## Count X
## Loss of Consortium by V.C.

137.    All previous paragraphs are incorporated by reference as if fully set forth herein.

138.    V.C. was the sister to Estrella Candelaria and enjoyed a close familial relationship with her.

139.    V.C. and Estrella had been removed together from their biological family home and spent most of their childhood in treatment foster care. They were never adopted or reunited with their biological family. V.C. and Estrella were all each other had.

140.    As a proximate result of Defendants' conduct, V.C. lost the society, companionship and guidance of her sister, Estrella.

141.    V.C. has suffered and continues to suffer damages as a proximate result of this loss of companionship and will continue to suffer these losses in the future.

## Count XI
### Loss of Consortium by Lorraine Gonzales

142.    All previous paragraphs are incorporated by reference as if fully set forth herein.

143.    Lorraine Gonzales was the biological mother to Estrella Candelaria.

144.    As a proximate result of Defendants' conduct, Lorraine Gonzales lost the society, companionship and guidance of her daughter, Estrella.

145.    Lorraine Gonzales has suffered and continues to suffer damages as a proximate result of this loss of companionship and will continue to suffer these losses in the future.

## Count XII
### Lorraine Gonzales' claim for Intentional Infliction of Emotional Distress

146.    All previous paragraphs are incorporated by reference as if fully set forth herein.

147.    The acts and omission complained of in the causes of action stated above are, upon information and belief, believed to be of such an egregious nature, in reckless, wanton and total disregard to the rights of Lorraine Gonzalessuffered from the intentional infliction of emotional distress, by and through the conserted efforts of Defendants' employees and Armanda Garcia and Martin Garcia in denying access to Estrella Candelaria and Valentina Candelaria to Lorraine Gonzales.

148.    Defendants  intentional conduct inflicted great emotional distress on Lorraine Gonzales by interfering with her familial relationship.

149.    Defendants above described actions constitute the willful and wrongful infliction of emotional distress upon Lorraine Gonzales.

21

150. That Defendants conspired with Armanda Garcia and Martin Garcia to prevent the familial relationship between Lorraine Gonzales, Estrella Candelaria and Valentina Candelaria inflicting great emotional distress upon Lorraine Gonzales.

151. That the Defendants are responsible under a theory of respondeat superior for the actions of Defendants Armanda Garcia and Martin Garcia, and Lorraine Gonzales is entitled to recover compensatory and punitive damages.

## Count XIII
### Lorraine Gonzales' claim for Interference with Parental Rights

152. All previous paragraphs are incorporated by reference as if fully set forth herein.

153. The acts and omission complained of in the causes of action stated above are, upon information and belief, believed to be of such an egregious nature, in reckless, wanton and total disregard to the parental rights of Lorraine Gonzales suffered from the conserted efforts of State Defendants, its contractors and employees and Armanda Garcia and Martin Garcia in denying access to Estrella Candelaria and Valentina Candelaria to Lorraine Gonzales for nine years, claiming that her parental rights were terminated.

WHEREFORE, Plaintiffs requests that the Court enter judgment in his favor and against Defendants for the following:

1. Compensatory damages in an amount to be determined at trial;

2. Punitive damages in an amount sufficient to punish Defendants for their intentional and reckless conduct and to deter such violations in the future;

3. Loss of consortium;

4. Pre and post judgment interest;

5. Reasonable attorneys' fees and costs of suit under 42 U.S.C. § 1988; and

6. For any relief deemed just and proper by this Court.

22

Respectfully submitted,

**MARTINEZ, HART, THOMPSON & SANCHEZ, P.C.**

*Electronically filed*
*/s/ Kelly Stout Sanchez*
F. Michael Hart
Kelly Stout Sanchez
1801 Rio Grande Blvd. NW, Ste. A
Albuquerque, NM 87104
(505) 343-1776; (505) 344-7709 fax
mikeh@osolawfirm.com; kellys@osolawfirm.com

***Attorneys for Personal Representative of the Wrongful Death Estate***

*~And~*

**COLLINS & COLLINS, P.C.**

Augustine M. Rodriguez
Alysan Booth Collins
P.O. Box 506
Albuquerque, New Mexico 87103
(505) 242-5958
Augustine@collinsattorneys.com;
Alysan@collinsattorneys.com

***Attorneys for Lorraine Gonzales***

23